**Ex parte Carlos CHAVEZ, Applicant.**

**No. WR–63830–01.**

Court of Criminal Appeals of Texas.

April 12, 2006.

Carlos Chavez, pro se.

Tom A. Darnold, Asst. Dist. Atty., El Paso, Matthew Paul, State's Atty., Austin, for state.

JOHNSON, J., filed a concurring statement in which PRICE, KEASLER, and HERVEY, JJ., joined.

I fully agree with the disposition of this writ application. I write to express a concern with the occasional mishandling of writ applications. Some counties have developed a routine of transmitting writ applications prematurely. That problem is easily addressed; this Court is aware of the application and usually returns the application to the sending county for retransmission at the proper time. The more insidious problems arise when this Court is not aware that an application has been filed because the application has not been transmitted. TEX.CODE CRIM. PROC. Art. 11.07, § 3. A great many of these cases of non-transmission are resolved when the applicant files a motion for leave to file a writ of mandamus against the appropriate county official.[1] The Court's practice in such cases is to hold the application in abeyance and order the clerk to respond to the applicant's allegations, or if an Order Designating Issues (ODI) is in place, to order the trial court to respond. My concern here is those applications for writ of habeas corpus that seem to become lost in the system.

When a person files an application for a writ of habeas corpus, it is returnable to the Court of Criminal Appeals, but it must be filed with the clerk of the convicting court. *Id.* There are many ways for an application to become "lost." Perhaps the easiest is simple misfiling. All courts are deluged with paper. The task is to keep track of it all. While unintentional, misfiling still deprives an applicant of the due process to which he is entitled and reveals a weakness in the system: an application mistakenly placed in another person's file indicates a lack of effective handling and tracking of paperwork.

In cases such as this one, it is difficult, if not impossible, to determine where the fault for the excessive delay lies. The case began with an offense on September 24, 1997. The indictment was returned on December 11, 1997. On March 24, 1998, applicant plead guilty and began a six-year term of deferred adjudication. The trial court proceeded to adjudication on November 30, 2000, assessed a penalty of two years in the Texas Department Criminal Justice—Correctional Institutions Division (TDCJ—CID), and granted one day of jail time credit. The next year, nearing the end of his sentence, applicant filed an application for a writ of habeas corpus that alleged that he was entitled to an additional three months of time credit. Then things went awry.

The Chronology

7/16/01 Applicant filed his application with the clerk of the court.

---

1. A complicating factor is that the vast majority of habeas applications are filed by inmates without the assistance of attorneys. These applicants may not be aware that mandamus is available or even that it exists.

8/9/01 The state filed a boilerplate response asking the trial court to enter an ODI designating a single issue: "Whether or not applicant is entitled to additional jail-time credit." The response urged an extension of time beyond the statutory 15 days, because of the "current writ caseload," the need to depose witnesses, secure affidavits, contact external agencies for relevant documentation, review the court reporter's records, and time needed to review all this information.[2]

8/13/01 The trial court entered the requested ODI.

10/27/05 The state filed an amended response urging the trial court to deny relief because applicant "was fully discharged . . . on or about November 27, 2002 . . . is no longer under restraint or confinement and the habeas jurisdiction of the Court of Criminal Appeals has ceased. . . . Furthermore, . . . [applicant] does not allege 'collateral legal consequences. . . .' "

10/27/05 The trial court entered the requested denial.

1/9/06 The Court of Criminal Appeals received the application.

The record contains no information as to why the writ lay fallow for over four years—long enough for the assessed sentence to be fully discharged and thus leaving applicant with a timely filed application that is now discounted by the state for failing to allege collateral consequences, when at the time of filing applicant was in custody and had no need to plead such consequences. Some might wish to dismiss this as inconsequential because it was "only three months." They would, I suspect, feel differently if it had been three months out of their own lives. And what if it had been a meritorious claim that a twenty-year sentence had been assessed for a Class B misdemeanor?

What happened? Four years of delay is egregious. Is there no tickler system in the clerk's office to track the status of writs? Is there such a system, but it failed? Is there no tickler system in the trial court to track the status of writs? Was the trial court waiting for the state to return with the results of its investigation? To submit draft findings of fact and conclusions of law? Did the state lose track of the writ? Or was it content to wait on the trial court, the very court that may very well have been waiting on the state to proceed? Even after the trial court finally acted on the application, this Court did not receive the application for over two months.

In the end, fault is not the issue. The issue is denial of appropriate and timely review of a claim based on a right guaranteed by the Texas Constitution.[3] Clearly, this applicant was denied such a review. Nor is the instant county alone in failing to ensure compliance with the statute. We see far too many stale applications for writ of habeas corpus and abate far too many writs of mandamus in order to discover why the application has not been forwarded to this Court in a timely manner.

There is nothing in the record to indicate whether applicant's claim had merit. If his claim were indeed meritorious, at best applicant lost 3 months of freedom.

**2.** I note that, more than four years after its original response, the state filed with the clerk of the court an "amended response" containing a single affidavit, dated October 27, 2005, from an employee of the District Attorney attesting to information received from an employee of TDCJ—CID on September 29, 2005.

**3.** Texas Constitution, Art. 12, § 12. "The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual." The laws enacted by the legislature "to render the remedy speedy and effectual" are found in the Code of Criminal Procedure, Arts. 11.07 and 11.071.

At worst, even if the claim were meritless, he, others like him, and their families lost all regard for the court system, a result that is far more troubling.